NO. 4-99-0933

20 October 2000

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

) McLean County

JERRY LEE FOSTER, ) No. 99CF464

Defendant-Appellant. )

) Honorable

) G. Michael Prall,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the court:

The charges in this case stem from a beating defendant, Jerry Lee Foster, gave to Vickie Talley, his cohabitant.  In the early morning hours of May 2, 1999, Talley was lying on the living room couch of the couple's home.  Both she and Foster had been drinking during an earlier family barbeque.  Foster at

tempted to talk to Talley as she lay on the couch, but she declined.  Foster then grabbed Talley's wrist and bent her fingers backward.  As she rose, he punched her in the nose, breaking it.  As Talley headed toward the bathroom, Foster struck her in the back of the head.

Foster was charged in five counts.  Count I alleged aggravated battery, a Class 3 felony, based on the punch in the face resulting in the broken nose (720 ILCS 5/12-4(a), (e) (West 1998).  Count II, where the jury entered a verdict of not guilty, alleged unlawful restraint, a Class 4 felony (720 ILCS 5/10-3 (West 1998).  The next three counts charged Foster with domestic battery--subsequent offense felony, a Class 4 felony (720 ILCS 5/12-3.2(a)(1), (b) (West 1998).  Count III was based on the punch in the face and the broken nose.  Count IV was based on the grabbing of the wrist and twisting it.  Count V was based on the punch in the back of the head.  Counts III to V each referred to two prior misdemeanors and two prior felonies.

Foster was sentenced to five years on count I and an extended term of six years on each of counts III to V, all to run concurrent to one another.    

I. THE ONE-ACT, ONE-CRIME RULE

Foster first argues that his convictions on counts I and III cannot stand because they are all predicated upon the same physical act, a single punch to Talley's nose.  See 
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845 (1977).  The State does not disagree but argues that count III, upon which Foster received a six-year sentence, should be allowed to stand, and count I, upon which Foster received a five-year sentence, should be vacated, even though count I involved a Class 3 felony and count III involved only a Class 4 felony.  
Cf.
 
People v. Olson
, 128 Ill. App. 3d 560, 563, 470 N.E.2d 1176, 1179 (1984) (only the conviction for the most serious offense can stand).  We have previously held that in the unusual situation where the trial court assigns a higher sentence to the offense given a less serious legislative classification, the conviction and sentence for the offense with the highest sentence should stand.  
People v. Lee
, 311 Ill. App. 3d 363, 373, 724 N.E.2d 557, 565 (2000).  In the present case, however, the six-year sentence on count III was an extended sentence.  Extended sentences are available only for "the 
class
 of the most serious offense" of which the offender was convicted.  (Emphasis added.)  730 ILCS 5/5-8-2(a) (West 1998).  The extended sentence itself was improper here because Class 4 was not the class of the most serious offense of which Foster was convicted.  
People v. Jordan
, 103 Ill. 2d 192, 205-06, 469 N.E.2d 569, 575 (1984).  Accordingly, there can be no argu

ment under 
Lee
 that count III was the most serious offense because of the greater sentence.  Foster's conviction for count III must be vacated. 

II.  EXTENDED-TERM SENTENCING

The State next argues that the remaining extended-term sentences may be upheld because they do not involve related courses of conduct.  In 
People v. Coleman
, 166 Ill. 2d 247, 255-

56, 652 N.E.2d 322, 326 (1995), the Supreme Court of Illinois, noting the rule that an extended-term sentence may only be imposed for the conviction within the most serious class, consid

ered whether the consolidation of unrelated charges at a plea and sentencing hearing restricts the sentencing alternatives that would otherwise be available in the case of a defendant convicted of multiple, unrelated criminal acts in separate prosecutions, concluding that it did not.  This court subsequently determined that the appropriate test to determine whether offenses arise from unrelated courses of conduct for purposes of extended-term sentencing is the least restrictive test, the "multiple acts" test of 
People v. King
.
  
People v. Bell
, 313 Ill. App. 3d 280, 285, 729 N.E.2d 531, 535 (2000).  Under that test, offenses arise from an unrelated course of conduct whenever offenses are sup

ported by more than one physical act, unless one offense is an included offense.  
People v. King
, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845 (1977) (the one-act-one-crime test).  

In applying the one-act-one-crime test, it is possible to find more than one act in almost every case.  For example, when one individual strikes another, it may be possible to identify the clenching of the fist, the drawing back of the arm, and the forward movement of the fist as separate acts.  The same blow may break the victim's jaw, twist the victim's back, and break the victim's arm when he falls to the ground.  The factor of time is an additional complication.  When a defendant unlaw

fully restrains an individual at 10:01, 10:02, and 10:03, are there three separate "acts" (or perhaps 180 separate acts if we look at each second)?  A realistic view of the one-act-one-crime rule must be applied to comply with 
Coleman
.  The offenses in 
Coleman
 involved different victims, locations, dates and criminal objectives; thus, the offense clearly involved unrelated courses of conduct.  
People v. Strickland
, 283 Ill. App. 3d 319, 324, 668 N.E.2d 1201, 1203 (1996).  We should not apply a rule which defeats the legislative direction that there be an extended sentence only for the class of the most serious offense.  730 ILCS 5/5-8-2(a) (West 1998).

Here, application of the multiple acts test demon

strates that Foster's conviction for aggravated battery and his convictions for domestic battery--subsequent offense involved the same course of conduct.  Foster's acts in twisting Talley's hand, punching her nose, and striking her in the back of her head were separated only by moments.  They were perpetrated on the same victim, at the same location, and were all acts of battery.  There were no intervening events.  Foster was engaged in a single course of conduct, the beating of his girlfriend.  Extended-term sentencing was therefore available only for the most serious class of offense, count I, the Class 3 aggravated battery.  We vacate that portion of the sentences imposed for Foster's convic

tions on count IV and count V which exceed the nonextended statutory maximum sentence of three years' imprisonment.  

III. ASSESSMENT OF COUNSEL FEES

The State concedes that the trial court did not hold a hearing before assessing $200 in counsel fees against Foster in conformity with statutory requirements (725 ILCS 5/113-3.1 (West 1998)) and that this part of the trial court's order must there

fore be vacated.  We vacate the trial court's payment order and remand for further proceedings.  
People v. Johnson
, 297 Ill. App. 3d 163, 165, 696 N.E.2d 1269, 1270 (1998).

IV. PUBLIC ACT 89-688 AND THE SINGLE SUBJECT RULE

Finally, Foster contends that his fine under the Violent Crime Victims Assistance Act (Victims Assistance Act) (725 ILCS 240/10(c)(1) (West 1998)) was improper because it was not levied by judicial order.  Foster argues that Public Act 89-

688 (Pub. Act 89-688, §2, eff. June 1, 1997 (1996 Ill. Laws 3738)), which amends the statute to allow the circuit clerk to assess such penalties, violates the single subject clause of the Illinois constitution.  Ill. Const. 1970, art. IV, §8(d).

In 
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 113, 728 N.E.2d 476, 483 (2000), the Supreme Court of Illinois held that, in enforcing the single subject rule, courts apply but a single test:  whether the matters included in an enactment have a natural and logical connection to a single subject.  The court expressly rejected the contention that the various portions of an enactment must be analyzed to determine whether they bear a natural and logical connection to each other.  
Premier Property
, 191 Ill. 2d at 114, 728 N.E.2d at 484.

Defining the subject of a bill is therefore key to the inquiry.  Courts often define the subject of a bill according to the title of the bill as designated by the legislature.  See, 
e.g.
, 
Premier Propery
, 191 Ill. 2d at 112, 728 N.E.2d at 483 (bill entitled "[An Act] in relation to property"); 
People v. Cervantes
, 189 Ill. 2d 80, 86, 723 N.E.2d 265, 268 (1999) (bill entitled "An Act to Create a Safe Neighborhoods Law"); 
Johnson v. Edgar
, 176 Ill. 2d 499, 516, 680 N.E.2d 1372, 1380 (1997) (bill entitled "An Act in relation to prisoner's reimbursement to the Department of Corrections for the expenses incurred by their incarceration"); compare 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 345-46, 718 N.E.2d 191, 194-95 (1999) (bill originally entitled "FY1996 Budget Implementation Act," held to relate to that subject despite fact that title subsequently changed to "An Act concerning State services, amending named Acts"); 
People v. Dunigan
, 165 Ill. 2d 235, 255, 650 N.E.2d 1026, 1035 (1995) (bill held to relate to amendment of the Criminal Code of 1961, without discussion of title).  Nonetheless, use of sweeping and vague categories cannot be permitted as it would render the single subject clause meaningless. See 
People v. Reedy
, 186 Ill. 2d 1, 10, 12, 708 N.E.2d 1114, 1118-19 (1999) ("An Act in relation to governmental matters, amending named Acts" held such a category).

Here, the legislature has named Public Act 89-688 (Pub. Act 89-688, eff. June 1, 1997 (1996 Ill. Laws at 3738)) "[An Act] in relation to criminal law."  For the purposes of this case, we take "the criminal law" as the subject of Public Act 89-688, this being a liberal enough construction to afford the legislature wide latitude in determining the content of the bill (
Johnson
, 176 Ill. 2d at 515, 680 N.E.2d at 1379), while not being so vague a category as to eviscerate the constitutional mandate.  But compare 
Premier Property
, 191 Ill. 2d at 125, 728 N.E.2d at 489, ("property" is so broad a taxonomy as to be useless) (Harrison, C.J., concurring in part and dissenting in part). 

Section 0.5 of Public Act 89-688 (Pub. Act 89-688, §0.5, eff. June 1, 1997 (1996 Ill. Laws at 3738-41)) concerns itself with amendment of the State Employee Indemnification Act (Act) (5 ILCS 350/0.01 
et
 
seq.
 (West 1996)).  The Act requires the Attorney General to represent state employees in civil proceedings under certain circumstances.  5 ILCS 350/2(a) (West 1996).  Section 0.5 of Public Act 89-688 amends the Act to allow the Attorney General to file counterclaims in such civil actions.  Pub. Act 98-688, §0.5, eff. June 1, 1997 (1996 Ill. Laws at 3740); 5 ILCS 350/2(b-5) (West 1998).

No matter how liberally the single subject rule is construed, Public Act 89-688 violates the rule
.  Civil actions bear no natural and logical connection to the criminal law.  State employees' representation in civil suits, by the Attorney General or otherwise, bears no natural and logical connection to the criminal law, nor do counterclaims made thereto.  The general subject matter of the bill and the provisions of this section are entirely discordant.  Therefore, Public Act 89-688 is unconstitu

tional.

Examination of the State's argument for the validity of Public Act 89-688 bears out our conclusion.  The only argument proffered by the State is that Department of Corrections (DOC) employees are engaged in enforcing the criminal law, DOC employ

ees are sometimes sued in civil actions by inmates, the Attorney General will sometimes defend them in such actions, so the provision at issue relates to the criminal law.

The State's argument is unavailing.  First, it is well settled that the natural and logical relations of a bill's provisions to that bill's subject are to be measured on the face of the bill.  
Dunigan
, 165 Ill. 2d at 254-55, 650 N.E.2d at 1035; 
Arangold
, 187 Ill. 2d at 351-52, 718 N.E.2d at 197; 
Cervantes
, 189 Ill. 2d at 93-94, 723 N.E.2d at 271-72 (plain language analysis).  The State's reference to facts extraneous to the bill's substantive provisions is therefore inapposite.  Further

more, the State's reasoning is specious.  Under such logic, Public Act 89-688 could contain agricultural provisions because DOC serves foodstuffs to its wards or income taxation provisions because such revenues fund DOC's operations.

Under the law therefore in effect at the time of Foster's convictions, the Victims Assistance Act assessment was a fine to be imposed by the trial court at the same time other fines and penalties are imposed.  We vacate the circuit clerk's assessment of the fine and remand for proper imposition of the fines by the circuit court.  
People v. Wisotzke
, 204 Ill. App. 3d 44, 50, 561 N.E.2d 1310, 1313 (1990).

V. CONCLUSION

In summary, we vacate Foster's conviction on count III (domestic battery) because it violates the one-act, one-crime rule; vacate the extended-term portions of Foster's convictions on counts IV and V (domestic battery) and direct the trial court to enter the maximum allowable sentence of three years' imprison

ment on these counts; and vacate the order of counsel fees and the Victims Assistance Act assessment against Foster, remanding each for further proceedings consistent with the views expressed herein.  Foster's convictions are in all other aspects affirmed.

Affirmed in part and vacated in part; cause remanded with directions.

GARMAN and MYERSCOUGH, JJ., concur.