THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL ROHLFS, Defendant-Appellant.

Fourth District    No. 4—99—0048

Opinion filed June 14, 2001.

MYERSCOUGH, J., specially concurring.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

A jury found defendant Daniel Rohlfs guilty of one count of theft by deception (over $300) (720 ILCS 5/16—1(a)(2), (b)(4) (West 1998)) and three counts of attempt (theft by deception) (720 ILCS 5/8—4(a), 16—1(a)(2) (West 1998)). Each count involved a different victim. The trial court sentenced Rohlfs to an extended term of 10 years' imprisonment on the theft count and concurrent terms of 364 days' imprisonment on the three attempt counts. On appeal, Rohlfs challenges the admissibility of certain evidence at trial, the sufficiency of evidence to support the conviction, and the fees and costs imposed at sentencing. After the initial briefs were submitted, Rohlfs filed a supplemental brief challenging his extended-term sentence based upon the United States Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm in part, vacate in part, and remand.

## I. BACKGROUND

Rohlfs was incarcerated in the McLean County jail beginning on May 22, 1998, for charges unrelated to those at issue here. Shortly thereafter, jail officials began receiving complaints from the public that an inmate was making collect phone calls to elderly women, pretending to be a relative and then asking the women to wire money to him via Western Union. One of the victims, Edra Thames, fell prey to the scam and wired $1,500 to Rohlfs. The money order was delivered to Rohlfs in jail, and he endorsed it. The money order was then confiscated and never deposited into Rohlfs' account. After this incident, Rohlfs was placed in isolation without access to a phone. The complaints regarding the phone scam ceased.

## II. MOTION *IN LIMINE* AND *MODUS OPERANDI*

Prior to trial, Rohlfs filed a motion *in limine* asking the court to prohibit the introduction of evidence linking him to three telephone scams that were not charged in the indictment at issue here. He argued that he would be prejudiced by the introduction of the other-crimes evidence because it was merely used to show a propensity to commit crime. The State argued that the evidence was properly admitted under the *modus operandi* exception to establish identity due to the similarities between the charged and uncharged offenses.

Rohlfs objects to the admissibility of testimony from two women that disclosed details about his phone scams. Rohlfs informed Sandra Magee that he would pick a name of someone who sounded old from a directory, call her, pretend to be a relative, and ask her for money. Magee also identified Rohlfs' records of the scams, including the individuals he contacted, relatives' names, and money requested. Rohlfs had boasted to Magee that he had used the scam to bond out of jail on a previous occasion. Karen Reynolds also testified, indicating that Rohlfs had asked her to retrieve Western Union wire transfers for him in the past. One of the wire transfers was sent to Rohlfs from Virginia Horton, the victim of a phone scam in Springfield, Illinois.

Rohlfs also claims the circuit court improperly admitted evidence relating to Eva Thacker and Betty Vance. These women received phone calls from an inmate at the jail requesting money. Testimony from jail officers established that, although several inmates had access to the phone in each cell block, Rohlfs was the only inmate who was in every cell block at the times the complained-of calls were made. For example, Vance was called from cell block H while Rohlfs was housed in that cell block. Similarly, Thacker was called from cell block E while Rohlfs was in that cell block.

■ Generally, evidence of other crimes is inadmissible where that evidence is relevant solely to establish a defendant's propensity to commit crime. *People v. Robinson*, 167 Ill. 2d 53, 62, 656 N.E.2d 1090, 1094 (1995). However, evidence of other crimes is admissible where relevant for a purpose other than to show the propensity to commit crime. *Robinson*, 167 Ill. 2d at 62, 656 N.E.2d at 1094. For example, evidence of other crimes may be relevant to prove intent, identity, motive, absence of mistake, *modus operandi* (*Robinson*, 167 Ill. 2d at 62-63, 656 N.E.2d at 1094), or the existence of a common scheme or plan (*People v. Crayton*, 175 Ill. App. 3d 932, 946, 530 N.E.2d 651, 660 (1988)).

■ Here, the State argues that the similarities between the charged and uncharged offenses justify admission of the other-crimes evidence to further establish Rohlfs' identity in the charged offenses. Such a showing must create a logical inference that, if Rohlfs committed a

former offense, he also committed the latter. See *People v. Willer*, 281 Ill. App. 3d 939, 954, 667 N.E.2d 708, 719 (1996). The offenses need not be identical but must share features that, although common to similar crimes in general, are distinctive when considered together. *Willer*, 281 Ill. App. 3d at 954, 667 N.E.2d at 719. Although there must be a persuasive showing of similarity, the test is not one of exact, rigorous identity, and some dissimilarity will always exist between independent crimes. *Robinson*, 167 Ill. 2d at 65, 656 N.E.2d at 1095.

■ In this case, the similarities between the charged and uncharged offenses far outweigh the differences and admission of the evidence was appropriate. All the victims were elderly women and, in each instance, the caller was a man. In every call, the caller claimed to be a relative. The caller always asked for money for his car. In four of the seven calls, the money was to be used for past-due car payments, supposedly to avoid repossession. In the other three calls, the money was to be used for car repairs because the caller had allegedly been in an accident. In five of these calls, the victims were asked to send the money via Western Union. The other two victims indicated that their calls never reached the point of discussion on how to send the money. In every call where the caller claimed to have been in an accident and the victim questioned whether he was in fact her relative, he said his voice sounded different because he had hit his throat on the steering wheel. In five of the calls, the caller asked for $1,500. All of the victims were called within a two-week time span from May 17, 1998, to June 1, 1998. Moreover, with respect to the calls made from the jail, Rohlfs was the only inmate to be in each jail cell block at the time the various calls were made.

In some cases, no particular factor is unique, but it is the totality of the factors that is probative. *People v. Biggers*, 273 Ill. App. 3d 116, 123, 652 N.E.2d 474, 479 (1995). When viewing the totality of factors in this case, the similarity between the charged and uncharged offenses is overwhelming. The circuit court here carefully reviewed the evidence relating to the admissibility of the other-crimes evidence. We conclude that the similarities created a logical inference that the same person committed both the charged and uncharged offenses. Thus, the circuit court did not abuse its discretion in admitting this evidence.

Finally, we find that the probative value of the evidence was not outweighed by the risk of unfair prejudice. The jury was instructed that the evidence concerning the uncharged conduct had been received on the issue of defendant's identification and could be considered only for that limited purpose. Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000); see *People v. Maxwell*, 148 Ill. 2d 116, 131-32, 592 N.E.2d 960, 967 (1992).

## III. SUFFICIENCY OF EVIDENCE

Edra Thames received a collect call on May 30, 1998, allegedly from the Macomb Hospital. The caller identified himself as her grandson and requested money for his car payment. The caller ultimately convinced Thames to send $1,500 via Western Union to Daniel Lee Rohlfs.

Curtis Anders, a McLean County jail employee, testified that on June 2, 1998, a money order for Rohlfs was picked up at the Kroger store in Bloomington. The money order was sent by Edra Thames. The money order was tendered to Rohlfs, and he endorsed it, but the funds were never credited to Rohlfs' account. Instead, the money order was given to Detective Springer, who had been investigating the jail telephone scam.

■ A person commits theft by deception when he knowingly "[o]btains by deception control over property of the owner." 720 ILCS 5/16—1(a)(2) (West 1998). Illinois courts have held that to sustain a conviction of theft by deception, the State must prove beyond a reasonable doubt that (1) the victim was induced to part with money, (2) the transfer of the money was based upon deception, (3) defendant intended to permanently deprive the victim of the use or benefit of the money, and (4) defendant acted with specific intent to defraud the victim. *People v. McManus*, 197 Ill. App. 3d 1085, 1096, 555 N.E.2d 391, 399 (1990). Rohlfs challenges the sufficiency of the evidence, claiming that the State failed to prove that he actually "obtained" control over Edra Thames' money. He argues that the State must prove he actually received money, not simply possession of the check.

■ Rohlfs' argument hinges upon the second element of the crime. He directs us to *People v. Morrison*, 260 Ill. App. 3d 775, 791, 633 N.E.2d 48, 60 (1994), *vacated*, 157 Ill. 2d 514, 515, 640 N.E.2d 630 (1994), where we stated the second element required that defendant "obtained the money by deception." While the language of the second element that we set forth in *Morrison* differs slightly from that in *McManus*, it is a distinction without a difference.

Illinois statutes define "obtain" as follows: "[i]n relation to property, to bring about a transfer of interest or possession, whether to the offender or to another." 720 ILCS 5/15—7(a) (West 1998). The jury was instructed on this definition of "obtain." Rohlfs was charged with theft by deception in that he "obtain[ed]," by deception, "control over" $1,500 belonging to Edra Thames, intending to permanently deprive her of that money. 720 ILCS 5/16—1(a)(2) (West 1998). Here, Rohlfs not only took physical possession of the check, he also endorsed the check, taking the necessary step to transfer the funds to his possession. The fact that jail officials intercepted the check before Rohlfs

could actually make use of the funds is immaterial. See *People v. Blitstein*, 192 Ill. App. 3d 281, 285, 548 N.E.2d 664, 666-67 (1989) (offense of theft by deception which alleged that defendant obtained by deception control over property of another, to wit, checks or orders for payment of money in excess of $300, was complete when defendant obtained control over a check from the victim, and not when he later cashed the check).

Contrary to Rohlfs' assertion, the State presented sufficient evidence for the trier of fact to find all the essential elements of theft by deception beyond a reasonable doubt. A reviewing court will not overturn the fact finder's verdict unless the evidence is so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. *People v. Brown*, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996). Having reviewed the record before us, we find that the evidence was not so unreasonable, improbable, or unsatisfactory as to leave a doubt of Rohlfs' guilt.

## IV. REIMBURSEMENT ORDER FOR APPOINTED COUNSEL

■ Defense counsel was appointed on June 26, 1998. On the same date, the circuit court entered an "initial reimbursement order for court[-]appointed counsel." Rohlfs was ordered to pay reimbursement in the amount of $200. The court found this amount to be reasonable and within Rohlfs' ability to pay.

In *People v. Love*, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Supreme Court of Illinois held that an appointed-counsel fee-payment hearing must be held. The circuit court must consider "the foreseeable ability of the defendant to pay reimbursement[,] as well as the costs of the representation provided," before a payment order can be entered. *Love*, 177 Ill. 2d at 563, 687 N.E.2d at 38. Since counsel had just been appointed and provided no representation at the time the reimbursement order was entered, there could have been no consideration of the cost of the representation provided. The State acknowledges that the required hearing was not held. Therefore, we vacate the reimbursement order and remand this cause for an appointed-counsel fee-payment hearing as required by *Love*.

## V. FINES AND COSTS ASSESSMENT

■ Rohlfs asserts that the fines and costs imposed by the circuit clerk in a postsentencing "Notice to Defendant" must be vacated. The order for judgment and sentence, signed by the judge, left the amount of fines and costs portion of the order blank. Specifically, Rohlfs argues that the $20 fine under the Violent Crime Victims Assistance Act (725 ILCS 240/10 (West 1996) (effective June 1, 1997)) was improper because it must be imposed by the court, not the clerk. In response,

the State notes that the relevant statute was amended in 1997, allowing the clerk to impose the fine. Pub. Act 89—688, § 2, eff. June 1, 1997 (1996 Ill. Laws 3738, 3748-50). However, after the briefs were submitted in this case, we held that Public Act 89—688 violated the single subject rule and was unconstitutional. *People v. Foster*, 316 Ill. App. 3d 855, 860, 737 N.E.2d 1125, 1130 (2000). Thus, we vacate the $20 fine and remand for proper imposition of the fine by the circuit court.

We reach a similar conclusion with respect to the remaining fines imposed in the "Notice to Defendant." The court docket entry appears to impose costs, but the sentencing order itself left the costs portion blank. Under these circumstances, we cannot simply affirm the costs in the "Notice to Defendant," even though their assessment is mandatory. See, *e.g.*, 705 ILCS 105/27.1(c)(1) (West Supp. 1997) (mandatory clerk fee of $40 for felony conviction); 55 ILCS 5/5—1103 (West 1998) (court services fee mandatory upon finding of guilt). Instead, we remand to the circuit court for assessment of costs as mandated by statute.

## VI. EXTENDED-TERM SENTENCE AND *APPRENDI*

■ Rohlfs was sentenced to an extended-term sentence of 10 years' imprisonment. 730 ILCS 5/5—8—2 (West 1998) (extended-term sentencing). Rohlfs argues that the extended-term sentence violates *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348, because the court imposed the extended sentence due to the fact that the victim, Edra Thames, was over 60 years old at the time of the offense. 730 ILCS 5/5—5—3.2(b)(4)(ii) (West Supp. 1997).

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. We agree that the age of the victim was not presented to the jury for proof beyond a reasonable doubt. However, the failure to ask the jury to determine the victim's age may have been harmless error. *United States v. Jackson*, 236 F.3d 886, 887 (7th Cir. 2001) (failure to ask jury to determine whether amount of crack was at least five grams was harmless error far beyond a reasonable doubt where defendant was involved in sale of hundreds, if not thousands, of grams of crack). Edra Thames testified at trial and indicated that she was 93 years old. There was no dispute regarding the victim's age and no reasonable jury could have found her to be under age 60. In any event, we need not rely upon the victim's age to affirm the extended-term sentence imposed.

Here, the trial court noted that Rohlfs was also eligible for the extended-term sentence because of his prior burglary conviction. 730 ILCS 5/5—5—3.2(b)(1) (West 1998) (prior conviction as aggravating factor justifying extended term). Pursuant to *Apprendi*, Rohlfs' prior burglary conviction need not be presented to the jury and provides the basis for our decision to affirm the extended-term sentence. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

## VII. CONCLUSION

In summary, we vacate (1) the reimbursement order for court-appointed counsel and remand for the hearing required by *Love*; and (2) the fines and costs assessed by the clerk's office and remand for assessment by the court. Rohlfs' conviction and sentence are affirmed in all other respects.

Affirmed in part and vacated in part; cause remanded with directions.

KNECHT, J., concurs.

JUSTICE MYERSCOUGH, specially concurring:

I agree with the majority but find the age of the victim is an appropriate sentencing factor. It is not an element of the crime, nor does it involve *mens rea*. Additionally, there was no credibility issue concerning the age of the victim. The victim was 93 years old as she testified, as was agreed, and as was found by the trial judge. Moreover, defendant did not object to this evidence or the trial court's consideration of age as a sentencing factor.

What rationale could there be for the legislature to allow the court to extend the term for a prior conviction, but not for uncontested facts such as the age of the victim?