NO. 4-05-0683     Filed 1/16/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|        Plaintiff-Appellee, | ) | Circuit Court of |
|        v. | ) | Champaign County |
| LEAVELL D. ALLEN, | ) | No. 03CF2215 |
|        Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi Ladd, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the modified opinion of the court:

Defendant, Leavell D. Allen, was charged with unlawful delivery of a controlled substance for delivering 1 gram or more but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2002)).  Defendant pleaded not guilty but was convicted in May 2005 after a jury trial.  The trial court sentenced defendant to a 12-year prison term.  He appeals.  We affirm in part, vacate in part, and remand with directions.

I. BACKGROUND

At defendant's jury trial, confidential informant Charles Duckworth testified for the State.  Duckworth, a convicted felon and former drug addict, was facing two counts of unlawful delivery of a controlled substance.  After Duckworth was arrested on the pending drug charges, he decided to work with the police in exchange for a recommendation of leniency.  In 1994, Duckworth was convicted of aggravated battery with a firearm and

aggravated discharge of a firearm and was sentenced to 11 years' imprisonment. In 1990 and 1991, Duckworth was convicted of criminal trespass to land, criminal sexual abuse, and criminal damage to property.

On November 11, 2003, Duckworth, under the supervision of Officers Jack Turner and Jaceson Yandell, bought heroin from defendant and his codefendant, Kelvin Conerly. Duckworth knew Conerly from high school and had heard Conerly sold drugs. According to Duckworth, Conerly had given him a phone number with which to contact him if Duckworth ever wanted to buy heroin. Duckworth told the police about the number. On November 11, 2003, after installing an audio recording device, an officer dialed the number, and Duckworth spoke with Conerly. After two recorded phone calls, Duckworth arranged to buy two grams of heroin from Conerly at the "usual spot" and for a prearranged price.

After the second phone call, the police searched Duckworth and his vehicle, fitted Duckworth with a concealed video camera, and gave Duckworth $400 to buy two grams of heroin. Duckworth drove to the location. The police had Duckworth in their view the entire time. After 15 to 20 minutes, Conerly pulled up in his car with defendant seated in the passenger seat. Duckworth testified that he walked over to Conerly's car, spoke with him, and passed the money to defendant, who then passed it

to Conerly. Conerly put the money in his pocket. Defendant handed Duckworth the drugs. Duckworth then walked back to his car and spoke briefly with someone on his way. Duckworth drove to a prearranged location, handed the officers the drugs, and had the camera removed. The officers searched Duckworth and his vehicle and returned his confiscated personal belongings.

On cross-examination, Duckworth stated that his mother is really sick and his biggest fear is that she will die while he is in prison. He agreed to the controlled buy because he wanted to stay out of prison as long as possible to be with her. During the buy, Duckworth wore a camera, but the camera only showed Duckworth reaching in the car and pulling his hand back out. The video did, though, show defendant sitting in the passenger seat. On redirect examination, the State played the portion of the tape that showed Conerly's car pull up, Duckworth put his hand in the car and pull it out, and Duckworth walk to get into his car.

Officer Turner testified for the State that he sets up controlled buys wherein a confidential source, usually someone with a criminal background, arranges to purchase a controlled substance. The police search the confidential source, give that person money, allow the sale to proceed, collect the controlled substance, and search the source again. The confidential source is watched the entire transaction. Turner was working with

Duckworth. Turner corroborated Duckworth's version of the phone calls to Conerly. Turner also stated that while Duckworth drove, Turner remained behind him in a marked covert city-owned vehicle. When Duckworth got close to the location of the buy, Turner stopped following, and Officer Matthew Henson watched him from a parked van near the location of the buy. Henson watched Duckworth as he left the location of the buy and until Turner began following Duckworth to the prearranged site for meeting after the buy. At that location, Turner received the heroin and searched Duckworth and his vehicle again. The State then played the tapes of the phone calls.

The parties stipulated that a forensic scientist determined that the substance Duckworth gave the police contained heroin. Officer Yandell testified that he assisted Turner in supervising the controlled buy, and he corroborated Turner's version of the buy. Officer Henson testified that he watched Duckworth after Turner stopped following, and he observed the actual transaction. Henson's testimony corroborated Duckworth's version. Henson could not, though, see what actually transpired inside the car and could not identify defendant.

The State rested after Henson's testimony. Defendant motioned for a directed verdict, which the trial court denied. The defense rested. Defendant then motioned for directed verdict, which the court again denied. While discussing jury

instructions, defendant's attorney objected to the instruction on accountability, arguing that the State presented no evidence of accountability. The State countered that the accountability instruction applied to Conerly, who was accountable for defendant's action of handing the substance to Duckworth. The court found sufficient evidence to justify giving the instruction and overruled defense counsel's objection.

In closing arguments, the State argued that drug dealers make easy money for just a few minutes of work consisting of driving to a location and exchanging the drugs. The State then argued the following:

"That's why Kelvin Conerly did this deal.
Leavell Allen went along with it. Maybe un-
wittingly, but he helped out on the deal.
Maybe he got something for his participation
from Kelvin Conerly. Maybe he didn't. We
don't know that. But we do know that he
helped out in this deal by handing over the
drugs."

Later in closing argument, the State read the jury instruction on accountability and argued the following:

"Now, how can two people be convicted of one
drug delivery? It's by accountability. When
the right hand and the left hand are working

together to accomplish something, both are accountable. And both can be found guilty for one drug delivery, because they both helped out on it. And that's what we have here. We have Kelvin Conerly setting the price with Chuckie Duckworth, giving Chuckie Duckworth the number, taking the calls from Chuckie Duckworth, setting up the meet location, driving to the meet location, at the meet location accepting the money from Chuckie Duckworth. During the deal, we have Leavell Allen taking the money from Chuckie Duckworth, handing it over to Kelvin Conerly, and then Leavell Allen handing over the heroin itself. Both worked together, during the commission. They were both aiding each other to get this accomplished."

After closing arguments, the jury was given instructions and commenced deliberations. The jury then returned a guilty verdict.

Defendant's motion for a new trial was denied. After a sentencing hearing, defendant was sentenced to 12 years' imprisonment and ordered to pay a local anticrime fee of $10, a genetic-marker-grouping-analysis fee of $200, a street-value fine

- 6 -

of $400, a lab fee of $100, and a mandatory assessment of $2,000. Defendant was given credit for 300 days served prior to sentencing and credit for $1,500 against his fines. Defendant's motion to reconsider sentence was also denied. This appeal followed.

## II. ANALYSIS

Defendant argues that the State misstated the law when it referred to defendant as "unwittingly" helping with the drug deal as this allowed the jury to believe it could convict defendant solely because he was present in the vehicle. Defendant further argues he is entitled to an additional credit of one day for time served prior to sentencing and an additional credit of $5 toward his fines. Finally, defendant argues the imposition of the following fines were in error: the spinal-cord-injury fee, the local anticrime fee, and the penalties imposed by the circuit clerk.

The State responds that the State's use of the word "unwittingly" referred to defendant's financial motives, not his intent to commit the crime, so the State did not misstate the law. Further, the State argues that defendant waived the issue and neither plain error nor ineffective assistance of counsel should allow review as the evidence in this case was not closely balanced. The State further argues that the sentence credit was correct as the date of sentencing should not be included in the calculations. Regarding the $5 spinal-cord-injury fine, the

State notes that the constitutionality of collecting the fine from drug offenders is the primary issue of <u>People v. Jones</u>, No. 101996, now pending before the Illinois Supreme Court.  Pending the outcome of the case, the State argues that the $5 fine is constitutional.  Finally, the State concedes that the $10 local anticrime fee should be vacated as a void order because no statutory authority authorizes such a fine when a defendant is sentenced to prison, and the State concedes that the mandatory fees and fines added by the circuit clerk should be vacated because the trial court did not impose them.

## A. Closing Argument Comment

Defendant claims he was denied his right to a fair trial by the State's misstatement of the law, which allowed the jury to convict him without finding that the State had proved his intent to promote or facilitate the commission of the offense beyond a reasonable doubt.  The State counters that the prosecutor's statement properly addressed defendant's financial motives for helping Conerly when he used the word "unwittingly."  Further, even if the use of the word was error, the State argues the issue is waived because defendant failed to object and the trial court properly instructed the jury.

We agree that the prosecutor's use of the word "unwittingly," while perhaps misleading out of context, was not a misstatement of the law.  The prosecutor used the word "unwit-

tingly" immediately after discussing Conerly's financial motive to commit the crime. Because defendant passed the money to Conerly, the prosecutor could not say whether defendant received a portion of the money and was motivated by the money. The prosecutor, therefore, acknowledged that defendant's participation may not have been motivated by financial gains when he used the word "unwittingly." The fact that defendant may not have received a portion of the money does not negate the fact that he actively participated in the transaction and through his action intended to aid in the commission of the offense.

The State never suggested that the jury could convict defendant based solely on the fact that he was present in the vehicle. In closing arguments, the State defined accountability then described how Conerly and defendant worked together to commit the crime. Conerly set up the drug deal and drove to the location. Defendant took the money, passed the money to Conerly, and then passed the drugs to Duckworth. The State never argued that defendant's presence in the car alone or his presence in the car coupled with his knowledge of what was about to happen was enough for the jury to convict. The State emphasized defendant's active participation in the commission of the crime. When it used the word "unwittingly," the State merely acknowledged that it could not prove that defendant was motivated to participate because of the money.

Because the State did not misstate the law in closing arguments, defendant was not deprived of his right to a fair trial, we affirm his conviction.

## B. Sentence Credit

Defendant next argues that he is entitled to an additional day of credit for time served and an additional $5 credit toward his fines because the day of sentencing should be included in calculating the number of days he spent in custody. The State contends that when a defendant is remanded to the Department of Corrections (DOC) on the day of sentencing, the day of sentencing should be excluded in calculating time spent in custody pre-incarceration. See People v. Foreman, 361 Ill. App. 3d 136, 157, 836 N.E.2d 750, 768 (2005) (holding that a defendant will not be credited for the day of sentencing when he is remanded to DOC that day); People v. Stewart, 217 Ill. App. 3d 373, 377, 577 N.E.2d 175, 177 (1991) (denying credit for the day the defendant was remanded from county jail to DOC); People v. Leggans, 140 Ill. App. 3d 268, 271, 488 N.E.2d 614, 616 (1986) (denying credit to a defendant for the day he was transported from county jail to DOC because DOC presumably credited the defendant for that day).

Citing People v. White, 237 Ill. App. 3d 967, 605 N.E.2d 720 (1992), defendant argues that courts have always credited defendants with time spent in custody on the date of sentencing. In White, though, the State conceded that the

defendant was entitled to an additional day's sentencing credit by calculating the days between September 17 to September 20, 1991, and December 12, 1992, to January 16, 1992.  Earlier in the facts of the case, the court stated that the defendant was sentenced on January 16, 1992.  Commenting only on the fact that the days agreed to by the defendant and the State do in fact add up to 40 rather than 39 days, the court granted an additional day's sentencing credit.  The opinion never discusses, though, whether defendant was remanded to DOC on the day defendant was sentenced.  White does not, therefore, directly contradict the cases cited by the State.

In this case, the record is clear that defendant was remanded to DOC on the day of sentencing.  Prior case law indicates that a defendant should not be given credit for the day he is remanded to DOC.  Defendant, therefore, is only entitled to 300 days and $1,500 toward his fines, which is what he was granted.

### C. Fines and Fees

#### 1. Spinal-Cord-Injury-Charge

Defendant claims the $5 spinal-cord-injury fee is unconstitutional.  The Supreme Court of Illinois has held the charge at issue is a fine and is constitutional.  People v. Jones, No. 101996, slip op. at 28-29 (December 21, 2006), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___.

- 11 -

## 2. Other Fines and Fees

The State concedes, and we agree, that the trial court had no statutory authority to impose a local anticrime fee when a defendant is sentenced to prison. See People v. Beler, 327 Ill. App. 3d 829, 837, 763 N.E.2d 925, 931 (2002). The State further concedes that the court never mentioned the following mandatory fines: $5 spinal-cord-injury-research fee, $100 trauma-center-fund fine, $240 surcharge, and $4 surcharge. While these fees are mandatory, the sentencing statute requires that they must be imposed by the court. 730 ILCS 5/5-9-1.1(c) (West 2004) (spinal-cord fee); 730 ILCS 5/5-9-1.1(b) (West 2004) (trauma-center fund); 730 ILCS 5/5-9-1 (West 2004) (surcharges); see also People v. Wisotzke, 204 Ill. App. 3d 44, 49-50, 561 N.E.2d 1310, 1313 (1990); People v. Rohlfs, 322 Ill. App. 3d 965, 971-72, 752 N.E.2d 499, 503-04 (2001). We have already determined that the spinal-cord fee is unconstitutional. As for the remaining fines, because the imposition of such fines is a judicial function beyond the authority of the clerk, we remand for proper imposition of the fines by the trial court. See Wisotzke, 204 Ill. App. 3d at 50, 561 N.E.2d at 1313; Rohlfs, 322 Ill. App. 3d at 972, 752 N.E.2d at 504.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's

judgment, except we vacate the fines imposed by the clerk, and remand for proper imposition of the fines by the court.

Affirmed in part and vacated in part; cause remanded with directions.

APPLETON and TURNER, JJ., concur.