THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES J. LIKAR, Defendant-Appellant.

First District (2nd Division)   No. 1—01—0453

Opinion filed March 29, 2002.

Bruce Rose, of Dvorak & Edmonds, Ltd., of Westchester, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Elizabeth E. Howlett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Following a bench trial, defendant Charles J. Likar was found guilty of criminal trespass to property and sentenced to one year of supervision. As part of his supervision, defendant was ordered to avoid contact with the complainants, complete a mental health examination and follow all treatment recommendations. On appeal, defendant contends that the order of supervision entered against him should be vacated because he was found guilty of an uncharged offense. In the alternative, defendant contends that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. We affirm the judgment of the trial court.

## BACKGROUND

The record demonstrates that a complaint was filed against defendant for the offense of criminal trespass to real property in violation of section 21—3(a) of the Illinois Criminal Code of 1961 (Code) (720 ILCS 5/21—3(a) (West 2000)). Although section 21—3(a) contains several subsections, the complaint failed to cite to any of the subsections specifically. However, the description of the offense set forth in the complaint utilized the language of 21—3(a)(3) (subsection (a)(3)) of the statute and alleged that defendant "knowingly remained upon the land of Sergio Parisi, 1221 Meadowcrest, LaGrange Park, Cook County, IL., after receiving verbal notice from the owner Sergio Parisi to depart."

At trial, the evidence in this case established that, on May 13, 2000, defendant, who resided at 1209 Meadowcrest in LaGrange Park, received a letter from the Department of Children and Family Services (DCFS) concerning a complaint he made against his neighbor, Rose Parisi (Rose), alleging that Rose was operating an "unlicenced daycare" in her home. At about 12:10 p.m., defendant walked to the Parisis' property located at 1221 Meadowcrest with the letter in hand in order to discuss the situation with the Parisis.

Sergio Parisi (Parisi), the complainant in this case, was outside mowing the lawn when defendant arrived and stood on the sidewalk in front of the Parisi residence. Parisi testified that he was wearing ear protectors and could not hear defendant, but saw that defendant was signaling that he wanted to have a conversation. Parisi told defendant, "I have nothing to say to you. Get away from me" and defen-

dant walked back toward his house. Parisi asserted that, prior to his initial May 13, 2000, visit, defendant had been given written and verbal notice to stay off the Parisi property.

Within five minutes of his departure, defendant returned to the Parisi residence on his bicycle. Defendant was standing on the "edge" of the Parisis' driveway, "[o]n the driveway part just right in front of the sidewalk," and was holding "papers" and an envelope in his hands. Defendant stated that he needed to show the papers to Parisi, but Parisi refused to have a conversation with defendant. Specifically, Parisi told defendant, "[g]et away from me. I have nothing to say to you. If you step foot on my property, I will have you arrested" and reiterated this statement six times. Defendant did not leave the property but, instead, threw the "papers" on the Parisis' property. He then walked about "ten feet off the front driveway *** onto [the] front lawn" in order to retrieve them. Once defendant walked on the lawn, Parisi told his wife to call 911. Defendant then returned to the sidewalk, apologized for entering the property and left.

On cross-examination, defense counsel asked Parisi if defendant entered his property prior to walking onto the lawn to retrieve his papers, and Parisi testified that defendant had not. This testimony was significant because, on direct examination, Parisi asserted that defendant stood on his driveway prior to throwing the papers on the lawn. On redirect examination, however, Parisi clarified his testimony regarding this issue and twice stated that defendant was standing on the driveway during his second attempt to speak with Parisi prior to entering the lawn area.

Detective Rompa of the LaGrange Park police department testified that he was called to the Parisi residence on the date in question. When he arrived, he saw defendant standing in his own driveway, which was two doors down from the Parisis' house. Detective Rompa spoke to defendant and learned that defendant went to the Parisi residence earlier that day on two occasions because he wanted to show the Parisis the DCFS letter. Defendant maintained that he stood on the public sidewalk in front of the Parisis' property during both visits until the wind blew the DCFS envelope out of his hands onto the Parisis' front lawn. Defendant then walked onto the Parisis' lawn to retrieve the DCFS envelope. Defendant admitted that, prior to entering the Parisi property, he had received a verbal warning not to enter.

Richard Mike testified that he lives at 1217 Meadowcrest. On May 13, 2000, he and Parisi were standing in their respective backyards having a conversation over the hedges. Parisi then began yelling "[g]et off my property." At that point, Mike noticed defendant, whom he could see "very clearly," standing in front of the Parisis' property on

"a little corner of grass" which was located "next to the walk that goes to the front door." Mike stated that Parisi ordered defendant off his property five or six times. Mike subsequently heard Parisi tell his wife to call 911 but was not aware of defendant's whereabouts at that time.

At the close of the State's case in chief, defendant made a motion for a directed finding, arguing that the evidence presented by the State was insufficient to prove the elements of the crime beyond a reasonable doubt. Defendant also argued that his presence on the Parisis' property was lawful under the emergency exception to the criminal trespass to property statute. See 725 ILCS 5/21—3(f) (West 2000). The trial court rejected these arguments and denied defendant's motion.

Defendant then testified on his own behalf. He explained that he went to the Parisi residence the first time on May 13, 2000, in order to tell the Parisis that DCFS was investigating Rose's "unlicenced daycare" and that he was the individual who spurred the investigation. As he stood on the sidewalk near the Parisis' front lawn, defendant noticed that Parisi was mowing the lawn and wearing ear muffs. When he realized that Parisi would not be able to hear anything he said, he went back to his own residence.

Defendant testified that he returned to the Parisi residence approximately 15 minutes later. He saw Parisi in the rear of his house. Defendant stood on the sidewalk "three feet to the left of the driveway" and told Parisi that he would like to speak with him. When Parisi did not respond, defendant removed the DCFS letter from the envelope and held it up for Parisi to see. A gust of wind then caused defendant to drop the envelope, which no longer held the letter, and the empty envelope fluttered into the Parisis' front lawn. Defendant asserted that he made a "reflexive movement" to retrieve the envelope which brought him into the lawn as well. As soon as he retrieved the envelope, he returned to the sidewalk. During this time, Parisi was yelling, "[i]f you don't leave I am going to call the police and have you arrested *** for trespassing." Defendant reported that he apologized to Parisi for stepping onto the lawn and explained that it was an accident, but Parisi nevertheless told his wife to call 911. Defendant denied standing on Parisi's driveway and denied that he had previously been told to stay off the property prior to May 13, 2000.

At the close of evidence, the trial court determined that "the issue is whether Defendant had received notice from Mr. Parisi not to enter his land or upon his land prior to him doing so." After considering the facts of the case and the reasonable inferences to be drawn therefrom, the court found defendant guilty of criminal trespass to property because the court believed that defendant "did go onto the land with

notice that he was not supposed to be there." The trial court rejected defendant's argument that his entry onto the land was lawful under the emergency exception to the statute, stating:

"I don't think there was really any reasonable belief that this *** envelope was in imminent danger of damage or destruction, and I don't believe the envelope is the type of property that the exception contemplated."

Defendant now appeals the trial court's judgment.

## ANALYSIS

### Found Guilty of an Uncharged Offense

■ Defendant was found guilty of the offense of criminal trespass to real property under a statute which provides as follows:

"§ 21—3. Criminal trespass to real property.

(a) Whoever:

(1) knowingly and without lawful authority enters or remains within or on a building; or

(2) enters upon the land of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden; or

(3) remains upon the land of another, after receiving notice from the owner or occupant to depart[.]" 720 ILCS 5/21—3(a) (West 2000).

Subsection (f) of the statute provides an emergency exception and states:

"This Section does not prohibit a person from entering a building or upon the land of another for emergency purposes. For purposes of subsection (f), 'emergency' means a condition or circumstance in which *** property is or is reasonably believed to be in imminent danger of damage or destruction." 720 ILCS 5/21—3(f) (West 2000).

On appeal, defendant first contends that the finding of guilt entered against him in this case must be vacated because he was unconstitutionally convicted of an uncharged offense. As a result of the defect in the complaint, defendant asserts that he was improperly prevented from preparing an adequate defense and was unprotected from subsequent prosecution arising from the same conduct. Defendant argues that he was found guilty of a violation of subsection (a)(2) of the criminal trespass to real property statute even though the complaint filed against him describes a violation of subsection (a)(3) of the statute. Defendant points out that subsection (a)(2) is not a lesser included offense of subsection (a)(3), and therefore, the trial court's finding of guilt was improper.

The State responds that the general citation to section 21—3(a) of

the Code in the complaint sufficiently notified defendant that he would be defending against all charges falling under the ambit of this section, which included the conduct described in subsections (a)(2) and (a)(3), and that defendant was properly found guilty under subsection (a)(2) because his conduct clearly violated that portion of the statute.

■ Both the United States and Illinois Constitutions provide a criminal defendant with the fundamental right to be informed of the nature and cause of the charges against him. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. When the sufficiency of a charging instrument is challenged for the first time on appeal, this court is called upon to determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to allow preparation of his defense and to allow pleading of the judgment as a bar to future prosecution arising out of the same conduct. *People v. Gilmore*, 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460 (1976); *People v. Pujoue*, 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440 (1975).

As previously noted, defendant contends that, because the complaint describes a violation of subsection (a)(3) and the trial court found him guilty based on a violation of subsection (a)(2), the trial court's finding of guilt is erroneous. We disagree.

Defendant's contention is predicated on the assumption that the conduct described in each subsection of section 21—3(a) constitutes a separate and distinct criminal offense. We disagree with this contention in reliance on the cases of *People v. Rosochacki*, 41 Ill. 2d 483, 244 N.E.2d 136 (1969), *People v. Allen*, 56 Ill. 2d 536, 309 N.E.2d 544 (1974), and *People v. Maxwell*, 148 Ill. 2d 116, 592 N.E.2d 960 (1992), which are squarely on point. In each of those cases, the defendants were charged with murder under subsection (a)(1) or (a)(2) of section 9—1 of the Code (720 ILCS 5/9—1 (West 2000)), which provides:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which causes death:

(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another[.]" 720 ILCS 5/9—1(a)(1), (a)(2) (West 2000).

However, at trial, the jury was instructed to determine defendant's guilt under these subsections, as well as subsection (a)(3), which was not charged in the indictments. Subsection (a)(3) provides that a person commits murder if:

"(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 2000).

On appeal, each of the defendants argued that he was prevented from preparing a defense and was subjected to double jeopardy violations because subsection (a)(3) of the statute, which the jury was allowed to consider, was not pled in the charging instrument. However, our supreme court rejected the defendants' claims and found that each of the subsections of the statute could be considered because each did not represent a separate, uncharged offense but, rather, described different ways in which a defendant could commit first degree murder, the offense charged.

Specifically, in *Rosochacki*, the court held that the defendant was not prejudiced by the instructions given to the jury because the defendant "was charged with murder and convicted of that crime" and there was no evidence which suggested that the variance between the type of murder charged and the types described in the indictment surprised defendant or made it impossible to prepare a defense based on the proof offered against him. *Rosochacki*, 41 Ill. 2d at 492, 244 N.E.2d at 141.

Likewise, in addressing the same allegation of error in *Allen*, the court stated:

"Under section 9—1 there is but one crime of murder, not three separate and distinct offenses as the defendant's argument assumes. Each of subparagraphs (1), (2) and (3) under section 9—1(a) describes the mental state or the conduct of the defendant which must accompany the acts which cause the death. If the defendant were charged with murder under subparagraph (a)(1) and acquitted, he could not again be charged and tried for the murder of the same individual under subparagraph (a)(2) or (a)(3)." *Allen*, 56 Ill. 2d at 543, 309 N.E.2d at 547.

Most recently, in *Maxwell*, the court pointed out:

"Illinois law recognizes only a single offense of murder, which may be committed in a variety of ways. Just as the method of committing murder is not integral to the offense and therefore need not be specified in the charging instrument[,] *** the precise statutory theory of the offense of murder is not a matter that must be specifically alleged." *Maxwell*, 148 Ill. 2d at 137, 592 N.E.2d at 970.

■ We conclude that our supreme court's reasoning in *Rosochacki*, *Allen* and *Maxwell* is readily applicable to the case at bar. Essentially, in committing a criminal trespass to property, the fundamental criminal act is the actual unlawful entry on the property of another, just as, in committing murder, the fundamental criminal act is the actual unlawful killing of another without justification. As our supreme court stated in *Maxwell*, the method of committing the offense is not "integral" to the actual crime and, therefore, does not need to be specified in the charging instrument. *Maxwell*, 148 Ill. 2d at 137, 592 N.E.2d

at 970. The criminal trespass to real property statute describes one offense that can be committed several ways through various mental states and courses of conduct described in the subsections of the statute. Indeed, like the subsections in the murder statute, the subsections here do not define separate offenses but, rather, describe "the mental state or the conduct of the defendant which must accompany the [criminal] acts." *Allen*, 56 Ill. 2d at 543, 309 N.E.2d at 547. Thus, in the case at bar, defendant was not convicted of an uncharged offense but, rather, was convicted of the charged offense based on conduct not described in the complaint.

We are mindful that, when reviewing a challenge to the charging instrument as in the instant case, we must consider whether the complaint protected the defendant from double jeopardy concerns upon acquittal and apprised the defendant of the charged offense. In this case, the lack of specificity regarding defendant's actual conduct in the complaint did not place defendant in danger of double jeopardy. Indeed, as our supreme court concluded in *Allen*, when a statute describes one offense, a defendant convicted of that offense based on conduct described in a subsection of the statute cannot be retried based on conduct described in a different subsection of the same statute if acquitted. *Allen*, 56 Ill. 2d at 543, 309 N.E.2d at 547. Because we concluded that the subsections of section 21—3(a) do not constitute separate offenses but, rather, describe specific mental states and conduct, the same principle must apply herein.

Further, as was the case is *Rosochacki, Allen* and *Maxwell*, a review of the record in the instant case does not show that defendant was surprised by or unable to defend against subsection (a)(2) of the criminal trespass to property statute. On the contrary, the record shows that defendant defended against subsection (a)(2) throughout trial by attempting to establish that Parisi did not warn him to stay off the land until defendant entered the land to retrieve his envelope on the date of the incident. This is evidenced by the following exchange between defense counsel and Parisi:

"Q. But when you told him you didn't want any contact, you didn't tell him to stay off your property?

A. Yes I have. I have in the past.

Q. On that particular day when you were mowing your lawn and you removed your earmuffs, at that time you said 'Stay away from me. I don't want to talk to you,' correct? Yes or no? Please just answer my question.

A. I told him the previous week.

Q. My question was on that date at that point in time when you took off your earmuffs, you just told him to stay away from you?

> A. Told him to get away from. I have nothing to say to you. Then he went home and came back."

It is apparent that, through this exchange, defendant was trying to establish that Parisi merely told defendant he did not want to speak to him, but did not tell defendant to stay away from his property before defendant entered upon it, which would constitute the violation described under subsection (a)(2) of the statute. If defendant believed that he was only required to defend against subsection (a)(3), this point would not have been a relevant or necessary part of his cross-examination of the complainant.

Furthermore, the record demonstrates that defendant became aware that the State intended to establish a violation of subsection (a)(2) early on in the trial when the State elicited testimony from Parisi and Detective Rompa that established that defendant was previously warned to stay off the Parisi property. Defendant did not object to this line of questioning at trial and did not raise claims of unfair surprise or inability to prepare a defense in his motion for a directed finding. For these reasons, we find that defendant was not deprived of his right to prepare a defense.

### Insufficient Evidence

In the alternative, defendant contends that the evidence against him was insufficient to sustain a conviction under either subsection (a)(2) or (a)(3) of the statute. Defendant concedes that he trespassed upon the Parisis' front lawn in order to retrieve an empty envelope, which previously contained the DCFS letter, but asserts that his entrance onto the property was lawful pursuant to subsection (f) of the statute, which provides that trespass is not prohibited in the event of an emergency which presents a danger to persons or property.

■ When the sufficiency of the evidence in a criminal case is challenged, this court must consider whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Heard*, 187 Ill. 2d 36, 85, 718 N.E.2d 58, 85 (1999). In a bench trial, it is the trial judge's responsibility to determine the credibility of witnesses, to weigh and draw inferences from the evidence and to resolve evidentiary conflicts. *People v. Mullen*, 313 Ill. App. 3d 718, 724, 730 N.E.2d 545, 551 (2000). A defendant's conviction will not be overturned on the basis of insufficient evidence unless the proof is so unsatisfactory or improbable that a reasonable doubt of the defendant's guilt exists. *People v. Joya*, 319 Ill. App. 3d 370, 380, 744 N.E.2d 891, 901 (2001).

■ In the case at bar, Parisi's testimony established that defendant

was told, prior to March 13, 2000, that he was prohibited from entering the Parisi property. Despite this knowledge, defendant went to the Parisi residence twice on the date in question. It is undisputed that defendant remained on the sidewalk without entering upon the Parisis' property during his first visit. However, Parisi's version of events established that defendant entered onto the Parisis' property during the second visit when defendant stood on the driveway. Although defendant was repeatedly told to leave and threatened with arrest while standing on the driveway, defendant nevertheless deliberately threw his empty envelope onto the front lawn and then ventured farther onto the Parisis' property in order to retrieve the empty envelope. While we acknowledge that Parisi's testimony was contradicted by defendant, who claimed that he never stood on Parisi's driveway and that a gust of wind, rather than his own volition, thrust the envelope onto the front lawn, we nevertheless must accept Parisi's testimony as credible, relying on the presumption that, in finding defendant guilty, the trier of fact resolved all evidentiary conflicts in favor of the State. *People v. Beasley*, 251 Ill. App. 3d 872, 882, 622 N.E.2d 1236, 1243 (1993). Thus, even if we were to agree with defendant's contention that an "emergency" was created when his empty envelope blew onto the Parisis' property, defendant would still be guilty of criminal trespass because he was standing on the Parisis' driveway with knowledge that he was prohibited from entering or remaining there prior to the alleged "emergency." The trial court's finding of guilt can therefore be predicated on both subsections (a)(2) and (a)(3) of the statute.

Moreover, assuming *arguendo* that defendant was not standing on Parisi's driveway and did not enter Parisi's property until he walked onto the front lawn to retrieve his empty envelope, we simply cannot see how retrieval of defendant's empty envelope constitutes an emergency as contemplated by the statute. According to subsection (f), an emergency exists when property is or is reasonably believed to be in "imminent danger of damage or destruction." 720 ILCS 5/21—3(f) (West 2000). In order to determine that subsection (f) applies to the case at bar, we would have to conclude that defendant's empty envelope constitutes property within the contemplation of the act which creates the emergency defense. We recognize that the statute does not break down or define the type or nature of the property covered by subsection (f), nor does it set forth the minimum required value of such property. However, we are driven to conclude that a used, empty envelope clearly traverses the line between "property" and "waste." To conclude otherwise would denote that a person could lawfully trespass on the property of another under the guise of an

"emergency" in order to recover any trivial object, such as a candy wrapper or piece of tissue, as constituting "property" under the provisions of the emergency exception.

Finally, even if we were to consider defendant's envelope as "property," we cannot see how retrieval of an empty envelope constitutes an emergency under the statute because there is no evidence in the record which suggests, because of weather conditions or other conditions on Parisi's property, that defendant's empty envelope was in danger of damage or destruction. Moreover, even if these conditions existed, the fact remains that defendant had other options, aside from unlawful trespass, that would have allowed him to retrieve his envelope.

In this respect, the facts of the case at bar are analogous to *People v. Haynes*, 223 Ill. App. 3d 126, 584 N.E.2d 1040 (1991). There, defendant argued trial counsel was ineffective for failing to assert a necessity defense where the evidence demonstrated that the defendant attempted to criminally trespass on a trailer home in order to use the telephone because he believed that he was in danger of physical assault. This court held that there was no justification for criminal trespass because defendant had alternative choices to obtain use of a phone which did not involve a criminal act, such as using the public phone in the trailer park or asking neighboring residents for assistance. *Haynes*, 223 Ill. App. 3d at 128-29, 584 N.E.2d at 1042. Here, as in *Haynes*, defendant had the option to retrieve his envelope by means other than unlawful trespass. Defendant could have asked another neighbor to retrieve the envelope, could have waited for the envelope to flutter out of the Parisis' yard or could have asked Parisi to either retrieve the envelope or grant defendant permission to do so. For these reasons, we conclude, as the trial court concluded, there was no "reasonable belief that this *** envelope was in imminent danger of damage or destruction" and that the envelope was not "the type of property that the exception contemplated."

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

CAHILL and McBRIDE, JJ., concur.