2025 IL App (1st) 240981-U

No. 1-24-0981

Order filed August 5, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23M1191765 |
| | ) | |
| RICHARD STRAPP, | ) | Honorable |
| | ) | Aileen Bhandari, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for criminal trespass to real property is affirmed where the evidence established that he knowingly and unlawfully remained on the complainant's property.

¶ 2    Following a bench trial, defendant Richard Strapp was found guilty of criminal trespass to real property and sentenced to six months' supervision. On appeal, defendant argues that the evidence did not establish that he committed criminal trespass to real property under any applicable

theory as he had no notice to stay off the complainant's property, did not remain there after being told to leave, and did not remain there knowingly and unlawfully. We affirm.

¶ 3    Defendant was charged by complaint with criminal trespass to real property alleging that he "knowingly remained upon [the] land" of Daniel Rowley  "after receiving notice from [Rowley] *** to depart." Although this language described conduct prohibited under section 21-3(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/21-3(a)(3) (West 2022) (prohibiting "remain[ing] upon the land of another, after receiving notice from the owner or occupant to depart")), the complaint cited to section 21-3(a)(1) of the Code (*Id*. § 21-3(a)(1) (prohibiting "knowingly and without lawful authority enter[ing] or remain[ing] within or on a building")).

¶ 4    At trial, Rowley testified that he owned his home on the 6200 block of West Gregory Street in Chicago and had resided there for four years. Rowley had a Ring camera above his front door. On April 7, 2023, he returned from dinner, parked in the garage, and entered his home when he received a notification from his Ring camera. Rowley walked out his front door and encountered defendant, whom he identified in court, on his front porch. Rowley had encountered defendant in person once before and had seen him "on video" seven times.

¶ 5    The State published three videos from the Ring camera located above Rowley's front door. This court has viewed the videos. In the first video, for which the trial court noted a time stamp of 20:14 (8:14 p.m.), defendant sits at the bottom of the steps leading to Rowley's home, facing away from the front door located at the top of the steps, with a backpack and a duffle bag nearby. A paved path, transecting a lawn, leads from the sidewalk to the steps where defendant sits.

¶ 6    In the second video, for which the State noted a time stamp of 21:03 (9:03 p.m.), defendant sits on Rowley's steps, still facing away from the front door. The door opens, defendant stands,

and turns toward the door. A man, who is not visible, asks defendant what he is doing on "my front porch," tells him to leave, and states he is going to get his firearm. Defendant gesticulates toward the backpack and duffle bag, gathers them as he speaks, inaudibly, to the man, and walks down the paved path toward the sidewalk. In the third video, defendant is on the path, almost at the sidewalk, facing Rowley's front door. The man is outside the door, holding it open, states he is calling the police, and threatens to shoot defendant if he returns.

¶ 7    Rowley testified that he asked defendant "what are you doing here," to which defendant responded, "what are you doing here?" Rowley told defendant that he was "unwelcome on [Rowley's] property" and Rowley would retrieve a firearm and shoot defendant if he returned. After doing "everything in [his] power to get [defendant] off of the porch and to leave the property," Rowley called the police, who arrived and arrested defendant.

¶ 8    Rowley testified he first "encountered" defendant and told him to leave at 8:14 p.m. Rowley subsequently clarified on cross-, recross-, and redirect examination that he received the first Ring notification and saw defendant on video on his steps at that time. He "obviously" did not confront defendant then because Rowley was not home. Rather, Rowley first made contact with defendant and told him to leave his property at "21:13" when Rowley returned home and defendant was still present. Rowley testified that he had never given defendant permission to be on the porch or allowed defendant to enter or remain there between 8 p.m. and 9 p.m., as he did not allow anyone on his porch, "especially" defendant, who "just shows up."

¶ 9    On cross-examination and recross-examination, Rowley agreed that his home was not a multi-unit home. When Rowley confronted defendant around 9 p.m., defendant left the porch/steps, and Rowley and defendant called the police "together."

¶ 10    Defense counsel moved for a directed finding, arguing that the evidence did not show that defendant "knowingly and without lawful authority entered or remained" on Rowley's property. Rather he was merely sitting on Rowley's steps and left when asked. The State responded by quoting section 21-3(a)(1) of the Code ("a person commits criminal trespass to property when he or she knowingly and without lawful authority enters or remains within or on a building"), arguing that Rowley owned the single family home, the home steps were curtilage of the property, and defendant was there for "roughly an hour" without Rowley's permission. The court denied the motion.

¶ 11    In closing, the State argued that defendant "knowingly, and without lawful authority, not only entered [Rowley's] property but remained on his property."

¶ 12    Defense counsel argued that the State did not charge defendant with violating subsection 3(a)(2), which prohibits unlawful entry onto land after notice. See *id*. § 21-3(a)(2). Instead, according to defense counsel, the State charged defendant with violating subsection 3(a)(1), which prohibits unlawfully entering and remaining on another's property. See *id*. § 21-3(a)(1). Counsel argued that Rowley never told defendant to leave the property at 8 p.m., and when defendant was told to leave at 9 p.m., he left.

¶ 13    According to counsel, defendant merely sat on the steps and his conduct did not constitute criminal trespass to real property. Counsel noted that neither a girl scout who goes to someone's door to sell cookies nor a police officer on someone's steps is charged with criminal trespass to property. Counsel argued citizens have an implied license to go onto a porch or steps leading to a home, which "get less protection" than the home itself.

¶ 14 The court found defendant guilty of criminal trespass to real property. In ruling, the court recited that Rowley, who owned the property, was out at dinner when he received a notification from his Ring camera that someone was on the porch at approximately 8:15 p.m. on April 7, 2023. Rowley also received a notification around 9:15 p.m. when he got home. He went to the porch and encountered defendant, who was sitting on Rowley's porch "in the same position as he was earlier" at around 8 p.m. It was not defendant's house, he had "no business being there," and "should not [have] be[en] there." Addressing the defense's argument regarding which subsection defendant was charged with, the court noted that all three theories of criminal trespass to real property outlined in the statute applied and the State could have charged any of the three subsections for the offense. It found that the State did not have to outline which subsection 3(a)(1), (2), or (3) "was sufficient notice" for the charge; "[t]hey are sufficient notice."

¶ 15 The court sentenced defendant to six months' supervision with no contact with Rowley or his residence. The written sentencing order stated that defendant had been found guilty under subsection 3(a)(2).

¶ 16 Defense counsel filed a motion and an amended motion to reconsider the finding of guilt and for a new trial. Counsel argued, in relevant part, that the State failed to prove criminal trespass to real property under "720 ILCS 5/21-3(a)(2) or (a)(1)" because defendant lacked notice that entry onto Rowley's property was forbidden. Counsel also argued that the charging instrument was "[f]atally [d]efective" for citing to subsection 3(a)(1), while containing language from other subsections. Therefore, defendant lacked proper notice of the charge. The court denied the motion, finding that Rowley testified credibly and that defendant was on Rowley's property "for some time" with no "purpose or business being there."

¶ 17    On appeal, defendant argues that the evidence did not establish that he committed criminal trespass to real property under any applicable theory as he had no notice to stay off the complainant's property, did not remain there after being told to leave, and did not remain there knowingly and unlawfully.

¶ 18    In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 19    The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 20    To prove defendant guilty of criminal trespass to real property, the State needed to show that defendant:

"(1) knowingly and without lawful authority enter[ed] or remain[ed] within or on a building;

(2) enter[ed] upon the land of another, after receiving, prior to the entry, notice from the owner or occupant that the entry is forbidden; [or]

(3) remain[ed] upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a)(1)-(3) (West 2022).

¶ 21    A defendant receives notice when he or she has been "notified personally, either orally or in writing" or if "a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to the land or the forbidden part thereof." *Id.* § 21-3(b).

¶ 22    The "knowingly" mental state applies to all elements of the offense. *People v. Hsiu Yan Chai*, 2014 IL App (2d) 121234, ¶ 34. A defendant acts "knowingly" or with knowledge of "the nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist" or "the result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2022). Knowledge is often proven through circumstantial evidence, rather than direct proof. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 44. A defendant "need not admit knowledge for the trier of fact to conclude that he acted knowingly." *People v. Penning*, 2021 IL App (3d) 190366, ¶ 19. Knowledge can be inferred from the surrounding facts and circumstances. *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23.

¶ 23 As an initial matter, we note that defendant challenges the sufficiency of the evidence under all three relevant subsections of the criminal trespass to real property statute. The complaint charged defendant with criminal trespass to real property in violation of subsection 3(a)(1) ("knowingly and without lawful authority enter[ing] or remain[ing] within or on a building") but described conduct prohibited under subsection 3(a)(3) ("remain[ing] upon the land of another, after receiving notice from the owner or occupant to depart"). 720 ILCS 5/21-3(a)(1), (3) (West 2022). Addressing the defense closing argument that defendant was charged under subsection 3(a)(1) and citing *People v. Likar*, 329 Ill. App. 3d 654 (2002), the court found that all theories of criminal trespass to real property outlined in the statute applied and there was sufficient notice of the charge.

¶ 24 We agree. When committing criminal trespass to real property, the "fundamental criminal act is the actual unlawful entry on the property of another." *Likar*, 329 Ill. App. 3d at 661. The subsections of the statute describe the different ways the fundamental criminal act can be committed and "do not define separate offenses." *Id*. at 662. Therefore, a defendant may be convicted of criminal trespass to real property based on conduct not described in the complaint. *Id*.

¶ 25 Here, the written sentencing order noted that defendant had been found guilty under subsection 3(a)(2). However, from court's oral pronouncement, which made no mention of notice, let alone the prior notice required for guilt under subsection 3(a)(2), it is clear that the court found defendant guilty under subsection 3(a)(1). "When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." (Internal quotation marks omitted.) *People v. Davis*, 2023 IL App (1st) 231856, ¶ 34. Given the court's oral pronouncement, we

consider whether defendant was proven guilty beyond a reasonable doubt of criminal trespass to real property under subsection 3(a)(1).

¶ 26    At trial, the evidence established that defendant sat on the bottom of the steps leading to the front door of Rowley's single family home between 8:14 p.m. and 9:03 p.m. with a backpack and duffle bag nearby. Rowley referred to the area as his "porch." To reach the porch, defendant would have traversed the lawn via the paved pathway that separated the private residence from the public sidewalk. Rowley testified that he did not allow defendant to be on his property between 8 p.m. and 9 p.m., and at no time allowed defendant to enter thereon or remain there. Notwithstanding, defendant stayed on the porch for nearly an hour, then left when confronted by Rowley.

¶ 27    This evidence, viewed in the light most favorable to the State, was sufficient to find defendant guilty beyond a reasonable doubt of criminal trespass to real property under subsection 3(a)(1). To prove defendant guilty under subsection 3(a)(1), the State must have shown that defendant "knowingly and without lawful authority enter[ed] or remain[ed] within or on a building." 720 ILCS 5/21-3(a)(1) (West 2022).

¶ 28    Here, a rational trier of fact could conclude that defendant violated subsection 3(a)(1). Rowley, the homeowner, did not give defendant permission to be on Rowley's property. Yet defendant, without permission from the homeowner, traversed Rowley's lawn and the pathway separating Rowley's porch steps from the sidewalk, sat down on Rowley's steps with his belongings about him, and remained there until he was told to leave almost an hour later when Rowley returned home and found him there. These circumstances, taken together, support the

inference that defendant knowingly entered and remained on Rowley's property without lawful authority. See *Frazier*, 2016 IL App (1st) 140911, ¶ 23.

¶ 29    In reaching this conclusion, we observe that subsection 3(a)(1) contrasts with subsections 3(a)(2) and 3(a)(3) in that subsection 3(a)(1) expressly addresses trespass to buildings while subsections 3(a)(2) and 3(a)(3) more generally address trespass to land. 720 ILCS 5/21-3(a)(1)-(3) (West 2022). The provisions addressing trespass to land require that a defendant enter or remain on the land after receiving notice that such conduct is prohibited, while the provision at issue here, which addresses trespass to a building, does not include a notice requirement. *Id.* Said otherwise, for purposes of subsection 3(a)(1), knowledge that entering or remaining on a building is unlawful may be proven by evidence other than express notice. Here, as explained, ample evidence supports the inference that defendant knew his presence on the porch was unlawful where he was on private residential property and had no permission to enter or remain thereon.

¶ 30    This conclusion comports with other decisions that have considered the issue of ingress onto private property.

¶ 31    For example, in addressing the authority of police to enter property and knock on the door of a residence without a warrant, the Supreme Court has observed that homeowners are assumed to grant an implied license for intrusion that "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, *and then (absent invitation to linger longer) leave*." (Emphasis added.) *Florida v. Jardines*, 569 U.S. 1, 8 (2013)). As the Supreme Court reasoned, "[c]omplying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters," such that "a police officer not armed with a warrant may approach a home and

knock, precisely because that is 'no more than any private citizen might do.' " *Id*. (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).

¶ 32    Also, in analyzing whether a stoop constitutes a public place of accommodation for purposes of the enhancing a battery to an aggravated battery statute, our supreme court observed:

> "[P]ublic accessibility, alone, is insufficient to transform a stoop, step, or walkway into a 'public place of accommodation or amusement.' *** Defining a stoop in front of a private dwelling as a public place of accommodation or amusement would expand the reach of the [aggravated battery] statute beyond what is reasonable. Such expansion could potentially cause any portion of privately owned property that is remotely accessible to the public to be considered public property. For example, if public accessibility is the only qualifier, a private driveway, a private deck, or a private backyard that is unobstructed by fencing or some other barrier could be considered a public place of accommodation or amusement, such that a battery occurring thereon could be enhanced and become an aggravated battery." *People v. Whitehead*, 2023 IL 128051, ¶¶ 24-25.

¶ 33    Although *Jardines* and *Whitehead* involved issues unrelated to the present appeal, these decisions are useful in considering the question at issue, namely, determining when an individual knowingly and without lawful authority enters and remains within or on a private building. Defendant, as noted, stayed on Rowley's porch steps for almost an hour, well beyond the implied license for intrusion contemplated in *Jardines*. Further, although the porch was accessible to the public and not obstructed by fencing, it was clearly not a public place of accommodation as contemplated by *Whitehead*.

¶ 34    Notably, the trespass statute contemplates instances when entering or remaining on property without authority is permissible. For example, the statute "does not prohibit a person from entering a building or upon the land of another for emergency purposes" (720 ILCS 5/21-3(f) (West 2022)) and includes exceptions for a "peace officer or other official of a unit of government who enters a building or land in the performance of his or her official duties" (*Id*. § 21-3(g)). Also, an exception to subsection 3(a)(1) exists where an individual "enters a public building" that has closed, but that individual is "under the reasonable belief that the building is still open to the public." *Id*. § 21-3(a)(1).

¶ 35    None of these circumstances apply in the present case, nor does the evidence suggest that defendant believed any such circumstance applied. To the contrary, all the evidence taken together could lead a rational trier of fact to conclude that defendant entered and remained on Rowley's property unlawfully. Thus, viewing the evidence in the light most favorable to the State, defendant was found guilty of criminal trespass to real property beyond a reasonable doubt.

¶ 36    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37    Affirmed.